1  **SETAREH LAW GROUP**
Shaun Setareh (SBN 204514)
2    shaun@setarehlaw.com
Brian Louis (SBN 353058)
3    brian@setarehlaw.com
4  SETAREH LAW GROUP
420 N. Camden Drive
5  Beverly Hills, California 90210
Telephone (310) 888-7771
6  Facsimile  (310) 888-0109

7
Attorneys for Plaintiff
8  ERIC M. WICKHAM

9                  **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11

12  ERIC M. WICKHAM, on behalf of himself,    Case No. 5:23-cv-00946-PCP
all others similarly situated,
13                                            Assigned For All Purposes to the
          *Plaintiff*,                        Hon. P. Casey Pitts, Courtroom 8
14
          vs.                                 **NOTICE OF MOTION AND RENEWED**
15                                            **MOTION FOR PRELIMINARY**
SCHENKER, INC., a New York company;          **APPROVAL OF CLASS ACTION**
16  and DOES 1 through 50, inclusive,          **SETTLEMENT; MEMORANDUM OF**
                                              **POINTS AND AUTHORITIES;**
17          *Defendants*.                      **DECLARATION OF SHAUN SETAREH**
                                              **IN SUPPORT THEREOF;**
18                                            **DECLARATION OF DENISE ISLAS;**
                                              **[PROPOSED] ORDER**
19
20                                            Date:        September 04, 2025
                                              Time:        10:00 a.m.
21                                            Place:       Courtroom 8

22

23

24

25

26

27

28
                                                   Case No.  5:23-cv-00946-PCP

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on September 04, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10 of this Court, located at 280 South First Street, San Jose, CA 95113, Plaintiff Eric Wickham, on behalf of himself and all others similarly situated and the general public ("Plaintiff"), seeks an order that this case be certified as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, and all documents and arguments in support thereof.

Plaintiff requests the following relief:

1. Preliminary approval of the Stipulation of Class Action and Representative Action Settlement and Release, ("Settlement") attached as Exhibit 1 to the Declaration of Shaun Setareh ("Setareh Decl."), and all related notice and other deadlines as set forth in the agreement or as otherwise ordered by the Court subject to the terms and conditions of the agreement so that Plaintiff may then move the Court for Final Approval of the Settlement Agreement;

2. Conditional certification of the Settlement Class as defined in the Settlement;

3. The appointment of Shaun Setareh, and Brian Louis of Setareh Law Group as Settlement Class Counsel;

4. The appointment of Plaintiff Eric M. Wickham as the Class Representative;

5. An Order directing the dissemination of the notice of class action settlement to the Settlement Class, via United States First-Class Mail as proscribed by the Settlement;

6. Appointment of Simpluris, Inc., as the Settlement Administrator;

7. An Order setting a schedule for the dissemination of notice to the Settlement Class; deadlines for Settlement Class Members to opt-out or object to the Settlement; and for a Fairness

Hearing to address final approval of the Class Action Settlement Agreement following the notice period.

        8.      Any other relief that the Court deems just and equitable under the circumstances.

DATED: August 06, 2025               SETAREH LAW GROUP

                                      */s/ Shaun Setareh*

                                        SHAUN SETAREH
BRIAN LOUIS
Attorneys for Plaintiff
ERIC M. WICKHAM

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ................... 2

        A.      PLEADINGS AND MATERIAL ALLEGATIONS ............................ 2

        B.      SUMMARY OF RELEVANT LAW ........................................ 3

                1.      The Fair Credit Reporting Act ("FCRA") .................................. 3

                2.      The Landmark *Syed* Decision ........................................ 4

        C.      THE DISCLOSURE FORMS AT ISSUE ................................ 5

        D.      DISCOVERY ................................................................ 5

        E.      THE PARTIES' MEDIATION EFFORTS ............................. 6

III.    ADDRESSING THE COURT'S APRIL 11, 2025 ORDER
        DENYING MOTION FOR PRELIMINARY APPROVAL OF
        CLASS ACTION SETTLEMENT (DKT. 97) ................................... 6

IV.     SUMMARY OF SETTLEMENT TERMS ...................................... 8

        A.      MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES
                AND COSTS, CLASS REPRESENTATIVE SERVICE
                AWARD AND PAGA ALLOCATION .................................... 8

        B.      CLASS AND PLAINTIFF RELEASES ................................. 8

                1.      The Release is Reasonable and Should be Approved ................. 9

        C.      SETTLEMENT ADMINISTRATION AND NOTICE ...................... 10

        D.      DISPOSITION OF UNCASHED CHECKS AND RESERVE
                FUND ...................................................................... 10

V.      LEGAL STANDARD FOR PRELIMINARY APPROVAL OF
        CLASS ACTION SETTLEMENTS IN THE NORTHERN
        DISTRICT .................................................................... 10

VI.     THE COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
        ADEQUATE" UNDER RULE 23(E) (2) AND THE CHURCHILL
        FACTORS ....................................................................... 12

        A.      Class Counsel and Plaintiff Adequately Represented the Class ........... 12

        B.      THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH ........ 12

        C.      THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE ........ 13

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1.     The Relief for the Claims Are Adequate, Given the Costs, Risks, and Delay of Trial and Appeal..........................................13

2.     The Proposed Method of Distributing Relief to the Class is Effective.................................................................................14

3.     The Proposed Award of Attorney Fees is Fair. .........................15

D.     Class Members Will Be Treated Equitably Relative to One Another................................................................................17

**VII. THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE ............17**

A.     INFORMATION ABOUT THE SETTLEMENT. ...............................17

1.     Differences Between the Settlement Class and the Class Proposed in the Complaint. ..........................................17

2.     Differences in the Claims to be Released and the Claims Pled. ..............................................................................17

3.     Other Cases Affected by the Settlement...................................18

B.     SETTLEMENT ADMINISTRATION .................................................18

C.     NOTICE. ...........................................................................................18

D.     OPT OUTS........................................................................................19

E.     OBJECTIONS...................................................................................19

F.     SERVICE AWARD. ..........................................................................19

G.     CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS..............................................................................19

H.     COMPARABLE OUTCOME. ...........................................................19

I.     ELECTRONIC VERSIONS. ..............................................................20

J.     OVERLAPPING CASES. .................................................................20

**VIII. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM...........................................................................20**

A.     THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT .................................................20

1.     Standard for Conditional Class Certification Upon Settlement .....................................................................20

2.     Numerosity...................................................................................21

3.     Adequacy of Representation......................................................21

4.    Typicality ....................................................................... 21

5.    Commonality ................................................................. 22

6.    Predominance and Superiority..................................... 22

7.    Plaintiff has Article III Standing and the Court Can Grant
       Class Certification ........................................................ 22

8.    Alternatively, if the Court Finds Plaintiff Lacks Article III
       Standing, It must Remand this Action to State Court ............... 24

IX.    CONCLUSION ............................................................................ 25

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ........................................ 20, 21

4   *Asarco Inc. v. Kadish*, 490 U.S. 605 (1989)......................................................................... 25

5   *Bell v. Hood*, 327 U.S. 678, 682 (1946) .............................................................................. 23

6   *Bouaphakeo v. Tyson Foods, Inc.*, 593 F. App'x 578, 585 (8th Cir. 2014) ..................... 23

7   *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008) ......................................... 15

8   *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................. 12

9   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)........................... 11

10  *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967).. 21

11  *Dalton v. Capital Associated Indus.* (4th Cir. 2001) 257 F.3d 409, 417 ............................ 13

12  *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. 2008)........................... 16

13  *Frlekin v. Apple*, 2021 WL 6126961 (N.D. Cal. 2021) ...................................................... 19

14  *Gilberg v. California Check Cashing Stores, LLC* (9th Cir. 2019) 913 F.3d 1169............................. 5

15  *Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991) .............................................................. 25

16  *Google Buzz Privacy Litig.*, 2011 WL 7460099, at *1 ......................................................... 7

17  *Grosset v. Wenaas*, 42 Cal.4th 1100, n.13 (2008)............................................................... 25

18  *Harrison*, 2021 WL 5507175, at *5 ...................................................................................... 24

19  *Henderson ex rel. Henderson v. Shinseki* 562 U.S. 428, at 434 (2011) .......................... 24

20  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ................................................. 9

21  *Horne v. Flores*, 557 U.S. 433 at 446–47 (2009)................................................................ 23

22  *Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) .......................... 24

23  *Jasmine Networks, Inc. v. Superior Court*, 180 Cal.App.4th 980 (2009) ...................... 25

24  *Laboratory Corporation of America Holdings, DBA LabCorp, v. Davis, et al.*, 605 U. S. (2025)  23

25  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ................................. 21

26  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)................................ 12

27  *Mirfasihi v. Fleet Mortgage Corp.*, 2007 WL 2608778 (N.D. Ill. Sept. 6, 2007)............................ 7

28  *Nachsin v. AOL LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ............................................... 7

*Norton v. LVNV Funding, LLC*, 2021 WL 3129568 (N.D. Cal. 2021) ........................................... 12

*NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013) ........................................... 12

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) ..................................... 21

*Perkins v. Linkedin Corp*, No. 13-CV-04303, 2016 WL 613255, at *11, slip op. at 20-21 (N.D. Cal. Feb. 16, 2016) ........................................... 7

*Polo v. Innoventions International, LLC*, 833 F.3d 1193 (9th Cir. 2016) ...................................... 24

*Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997) .............................................. 16

*Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47 ........................................... 13

*Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288 (N.D. Cal. 2019) ................................... 19, 20

*Serrano*, 20 Cal. 3d at 49 ........................................... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ................. 23

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................... 20, 23

*Suarez v. Bank of America, N.A.*, 2023 WL 5837495 (N.D. Cal. 2023) ....................................... 24

*Syed v. M-I LLC*, 853 F.3d 492, 499 (9th Cir. 2017) ........................................... 4, 5, 23

*Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ........................................... 11

*TransUnion v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) ........................................... 20

*Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *5 (N.D. Cal. June 29, 2017) ........................................... 18

*Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482 ..................................... 14

*Vill. of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, at 264 & n.9 (1977) ........................................... 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................... 15

*Warth v. Seldin*, 422 U.S. 490, 498 (1975) ........................................... 23

*Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1301 n.10 ................................... 16

*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247-48 ........................................... 24

*Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) ........................................... 9

## S**tatutes**

15 U.S.C. § 1681 *et seq.* ........................................... 22

15 U.S.C. § 1681b ........................................... 4, 5

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

15 U.S.C. § 1681b(b)(2)(A) ............................................................................................. 3

15 U.S.C. § 1681b(b)(2)(A)(i) ......................................................................................... 4

15 U.S.C. § 1681b(b)(2)(A)(ii) .................................................................................... 4, 5

15 U.S.C. § 1681b(b)(2)(C) ......................................................................................... 1, 8

15 U.S.C. § 1681n .................................................................................................... 4, 13

15 U.S.C. § 1681n(a)(1) ................................................................................................ 13

15 U.S.C. § 1681n(a)(1)(A): ........................................................................................... 4

15 U.S.C. §§ 1681, *et seq.* ............................................................................................ 1

15 U.S.C. § 1681b(b) ...................................................................................................... 3

28 U.S.C. § 1447(c) ................................................................................................. 24, 25

577 U.S. 442 (2016) ..................................................................................................... 23

Cal. Bus. & Prof. Code § 17200 et seq. .......................................................................... 3

Cal. Civ. Code § 1786, et seq. ......................................................................................... 3

Civ. Code § 1786.50(a) ................................................................................................. 18

Civ. Code §1786.52(b) .................................................................................................. 18

Code of Civil Procedure § 382 ....................................................................................... 1

**<u>Rules</u>**

Fed. R. Civ. P. 23(a) ........................................................................................... 20, 21, 22

Rule 23(a)(1) ................................................................................................................. 21

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 22

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 22

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 21, 22, 24

Fed. R. Civ. P. 23(e) ................................................................................................ 11, 12

Fed. R. Civ. P. 23(e) (2)(C) ........................................................................................... 13

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................................ 11

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................ 11

Fed. R. Civ. P. 23(e)(2) ............................................................................ 11, 12, 13, 17

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 12

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Fed. R. Civ. P. 23(e)(3) ................................................................................................. 11, 13

Fed. R. Civ. Proc. 23(e)(1)(A) ............................................................................................ 11

Fed. R. Civ. Proc. 23(e)(1)(B) ............................................................................................ 11

Fed. R. Civ. Proc. 23 ........................................................................................................... 20

Rule 23(a)(4) ........................................................................................................................ 21

Rule 23(b) ....................................................................................................................... 21, 22

Rule 23(e)(2)(D) ................................................................................................................... 17

# I.    INTRODUCTION

Plaintiff ERIC WICKHAM ("Plaintiff") respectfully requests that this Court conditionally certify the below-defined Settlement Class for settlement purposes pursuant to Federal Rules of Civil Procedure Rule 23, preliminarily approve the Stipulation of Class Action Settlement Agreement (the "Settlement")[1] with Defendant SCHENKER, INC., ("Defendant"), direct that notice be disseminated to class members, and schedule a final fairness and approval hearing.

The Settlement provides for a Gross Settlement Amount ("GSA") of $1,275,000 to be paid by Defendant in compromise of the disputed claim in this action for alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, in connection with the pre-employment background checks allegedly conducted on Plaintiff and the class by Defendant.  The GSA represents approximately 43% of the value of the amount to be paid to the class if liability could be proven at trial and the expected minimum penalty was awarded (and 4.3% of the *maximum* possible penalty under the FCRA).  There are approximately 29,628 Class Members. (Declaration of Shaun Setareh ("Setareh Decl.") ¶ 11, Ex. 1 – Settlement, ¶ 15.)  On a *gross* basis, each Class Member would receive approximately $43.03 [$1,275,000 ÷ 29,628 = $43.03], and the actual estimated average payment to each Class Member is $25.16.  Class counsel has zealously represented Plaintiff and obtained an excellent recovery for the Class. As explained fully herein, the Settlement is a fair, adequate, and reasonable compromise of the disputed claims asserted in this action, and this Court should preliminarily approve the Settlement.

Plaintiff pursues the claims on behalf of a "Settlement Class" (or "Class") defined in the Settlement as: "all persons residing in the United States who applied for a position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) between November 20, 2014 and February 28, 2022 and about whom Defendant procured a consumer report." Settlement, ¶ 1.5.  The "FCRA Class Period" (or "Class Period") is the period from "November 20, 2014 and February 28, 2022." Settlement, ¶ 1.8.  The Net Settlement Amount ("NSA") is defined as the amount remaining in the

---

[1] A fully executed copy of the Settlement is attached as **Exhibit 1** to the Declaration of Shaun Setareh filed concurrently herewith in support of this Motion.

GSA after the following deductions are made: 1) Class Representative Service Award of $7,500 to Plaintiff; 2) Administrative Costs estimated to be up to $73,000.00; and 4) Class Counsel Award of one-third (1/3) of the GSA (i.e., $425,000.00) in fees and litigation costs actually incurred up to $24,000. *Id.*, ¶¶ 1.21, 3.2-3.4.

The GSA of $1,275,000 is an excellent result for the class that equals or surpasses recent FCRA settlements involving allegedly unlawful disclosure forms.

No Class Member will have to make a claim in order to recover. Settlement, ¶ 3.5. Instead, Class Members will be mailed their share of the settlement directly. *Id.*, ¶ 7.2. Funds represented by Individual Settlement Payment checks returned as undeliverable and Individual Settlement Payment checks remaining un-cashed for more than 180 days after issuance will be tendered to the Electronic Privacy Information Center, a non-profit consumer privacy organization focused on bringing public attention to emerging privacy and civil liberties issues across the United States. *Id.*, ¶ 7.5; *see* https://epic.org/about/non-profit/.

In order to arrive at this Settlement, Plaintiff engaged in arm's-length negotiations with Defendant, including a day-long mediation session on or around November 4, 2024 with Hunter Hughes, Esq. At and after the mediation session, the Parties extensively discussed their views of the strengths and weaknesses of the case including the merits and risks. Setareh Decl., ¶ 10. Defendant has mounted several defenses to Plaintiff's claims, both on the merits and with regard to class certification. Thus, although Plaintiff was prepared to litigate this case through class certification and ultimately to trial, there were risks in going forward with litigation, and the Settlement represents a fair, adequate, and reasonable compromise in view of those risks. It guarantees a generous recovery for the Class commensurate with the likely recovery at trial should liability be established and is plainly within the range of reasonableness for preliminary approval while avoiding the expense and uncertainty of litigation.  Accordingly, the Court should grant preliminary approval and order that notice be sent to the Class.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     PLEADINGS AND MATERIAL ALLEGATIONS

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

On November 20, 2019, Plaintiff Michelle Orpilla filed a putative nationwide class action Complaint in the Superior Court of California, County of Santa Clara. On August 18, 2021, a First Amended Complaint was filed, naming Eric M. Wickham, as the new Plaintiff, captioned Wickham v. Schenker, Inc. Thereafter, Plaintiff ERIC M. WICKHAM filed a Second Amended Complaint was filed on March 2, 2023. On March 3, 2023, Defendant removed the Complaint to federal court in the Northern District of California. Plaintiff's Complaint asserts a claim for a violation of 15 U.S.C. § 1681b(b)(2)(A) of the Fair Credit Reporting Act. If the case proceeded, Plaintiff may also have alleged violations of California's Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786, et seq. ("ICRAA"), California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785, et seq. ("CCRAA"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), based on the allegations in the Complaint. Settlement, ¶ 2.1; Setareh Decl. ¶ 4.

Defendant denies (1) all material allegations in the Action, (2) that they violated any applicable laws, (3) that they are liable for damages, penalties, interest, restitution, attorneys' fees or costs, or for any other compensation or remedy with respect to anyone on account of the claims asserted in the Action, and (4) that class certification is appropriate as to any claim or proposed class in the Action. Defendant contends that their policies, procedures, and practices comply with all applicable laws asserted or that could have been asserted in the Action. Nonetheless, without admitting any liability or wrongdoing whatsoever and without admitting that class certification is appropriate for any purpose other than for settlement purposes alone, Defendant have agreed to settle the Action on the terms set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation. Any statements by Defendant in this Agreement are made for settlement purposes only.

**B.    SUMMARY OF RELEVANT LAW**

**1.    The Fair Credit Reporting Act ("FCRA")**

The FCRA, 15 U.S.C. section 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they obtain "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b(b) of the FCRA, no person can obtain a consumer report for

-3-                Case No.  5:23-cv-00946-PCP
RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). The person obtaining the consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii). A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . [and] such amount of punitive damages as the court may allow."

## 2.    The Landmark *Syed* Decision

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the standalone disclosure requirement of the FCRA. *Syed v. M-I, LLC* (9th Cir. 2017) 853 F.3d 492. In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 498. The Ninth Circuit held that under the plain language of the FCRA the required disclosure must be in "a document that consists solely of the disclosure" and that the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure: "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 496.

While *Syed* involved a liability release, Plaintiff contends its holding is broader. *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that***

***Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i).*** *See* 15 U.S.C. §§ 1681d, 1681s-3.

*Syed*, 853 F.3d at 501 (emphasis added).

Put in simplest terms, "solely" means just what it appears to mean, and, in Plaintiff's view *no* implied exceptions to the "solely" requirement should be judicially added to the *one* express exception allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C. § 1681b(b)(2)(A)(ii).

The United States Court of Appeals for the Ninth Circuit has found that a background check disclosure document that Plaintiff contends is similar to the one here did not comply with the FCRA standalone document requirement and was not clear. *Gilberg v. California Check Cashing Stores, LLC* (9th Cir. 2019) 913 F.3d 1169.[2] The form in *Gilberg* included references "extraneous information," including rights under various states' law and to a separate document containing a summary of rights, as Plaintiff alleges regarding the forms here. *Id.*, at 1175-1176.

## C.    THE DISCLOSURE FORMS AT ISSUE

In Plaintiff's view, the disclosure forms utilized by Defendant during the Class Period fall far short of meeting the standards set forth in *Syed* and *Gilberg*. Plaintiff contends that the forms are replete with extraneous information, including but not limited to notices about various state law rights, and any consent or authorization obtained by Defendant from its employment applicants to have background check reports procured with respect to them were obtained in violation of the FCRA in failing to meet those standards. Defendant, however, has disagreed that its disclosure forms violated the FCRA, that it obtained any consumer reports without valid consent, and that it acted willfully with respect to any alleged violation of the FCRA, as discussed below.

## D.    DISCOVERY

---

[2] Setareh Law Group is lead counsel in *Gilberg v. California Check Cashing Stores, Inc.*

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Through substantial and extensive formal and informal discovery, Defendant provided Plaintiff's counsel with documents necessary to investigate the claims of the class. In particular, Defendant produced the background check disclosure used during the Class Period in formal discovery, presented information regarding the alleged statute of limitations defense, and confirmed the applicable estimated class size through extensive data analysis. The Parties agree that the foregoing exchange of information and evaluation are sufficient to assess the merits of the respective Parties' position. Settlement, ¶ 2.4; Setareh Decl. ¶ 5.

Prior to settlement, and pursuant to a Motion to Compel granted in state court, Plaintiff obtained class contact information, all applicable authorization and disclosure forms utilized during the class period, as well as the number of class members who were provided each form in use during the class period. *Id.* ¶ 6.

### E.    THE PARTIES' MEDIATION EFFORTS

On November 4, 2024, the Parties attended a full-day mediation conducted by Hunter Hughes, Esq., a highly respected mediator with expertise in FCRA class actions, and were able to reach an agreement to resolve the claims released herein. *Id.*, ¶ 7; Settlement, ¶ 2.3.

### III.    ADDRESSING THE COURT'S APRIL 11, 2025 ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 97)

This Court previously identified several deficiencies in Plaintiff's Motion for Preliminary Approval. *See* Order Denying Motion for Preliminary Approval (the "Order"), dated April 11, 2025.[3] Specifically, the Court requested the parties resolve the following before filing a renewed motion for preliminary approval:

- Ambiguity regarding the scope of the release. Plaintiff addresses this in Section IV(B)(1).

- Finding that the proposed *cy pres* is impermissible. The parties have addressed this by amending the Settlement to include a new *cy pres*, Electronic Privacy Information

---

[3] The Court additionally previously requested supplemental briefing on a number of issues (Dkt. 90). Plaintiff submitted supplemental briefing in support of his Motion for Preliminary Approval (Dkt. 95). For the Court's convenience, Plaintiff re-attaches this briefing as Exhibit 2 to the Declaration of Shaun Setareh.

Center ("EPIC"), which has been approved in similar consumer privacy cases, including FCRA cases. *See Mirfasihi v. Fleet Mortgage Corp.,* 2007 WL 2608778 (N.D. Ill. Sept. 6, 2007) aff'd, 551 F.3d 682 (7th Cir. 2008) (finding the *cy pres* distribution to EPIC "cause[d] an improvement in the settlement that provides additional benefits to the plaintiffs and to the community"); *see also Perkins v. Linkedin Corp*, No. 13-CV-04303, 2016 WL 613255, at *11, slip op. at 20-21 (N.D. Cal. Feb. 16, 2016) ("[t]he Court finds that EPIC's receipt of other cy pres awards in privacy cases demonstrates that EPIC is well-suited to be a cy pres recipient in the instant privacy case. *See In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *1 ('EPIC has demonstrated that it is a well-established and respected organization within the field of internet privacy.')".) "The cy pres remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011) Here, that standard is met— EPIC benefits the members of the class here. Class Counsel does not have a relationship with the proposed cy pres. Setareh Decl. ¶ 41.

- Concerns regarding the conditional class certification of a nationwide class due to Article III standing issues. Plaintiff has addressed this in Section VIII(A)(7)-(8).

- Concerns about the attorneys fees requested and requested Plaintiff's enhancement award. This will be more fully addressed in a future Motion for Attorneys' Fees, which will provide additional support for Plaintiff's requested enhancement award, as well as a lodestar from Plaintiff's counsel. However, the Settlement provides the Court may reduce the requested Service Payment (Settlement, ¶ 1.31) with any reduction being reallocated to the Net Settlement Amount. The same is true for the requested attorneys' fees (Settlement, ¶ 3.3). As such, preliminary approval should be granted, with these issues being addressed in a future Motion for Attorneys' Fees filed on or around the same time as a Motion for Final Approval.

IV.    **SUMMARY OF SETTLEMENT TERMS**

A.    **MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE SERVICE AWARD AND PAGA ALLOCATION**

The Settlement Agreement provides for a Gross Settlement Amount ("GSA") of $1,275,000. Settlement, ¶ 3.1. That amount is the maximum Defendant will pay unless the Escalation Clause in paragraph 3.1.1 is triggered.

Settlement checks will be mailed directly to class members unless they opt out. Settlement ¶ 7.2. After 180 days, there will be a second distribution of the residue from uncashed checks to Class Members who cashed their first check who will have 180 days to cash the second check. *Id.* ¶¶ 7.3-7.4. After 180 days from the second distribution, any remaining unclaimed funds will be distributed to the Electronic Privacy Information Center as a *cy pres* recipient. *Id.*, ¶ 7.5.

Subject to court approval, the following amounts will be deducted from the GSA: Class Counsel fees of $425,000 (one-third of the GSA) and costs of up to $24,000, settlement administration costs estimated to be $73,000, and Plaintiff's enhancement award of $7,500. *Id.*, ¶¶ 3.2-3.4. The amount left over after these deductions is the Net Settlement Fund. *Id.*, ¶ 1.21.

Any amounts for attorney fees, expenses, class representative service payment, or PAGA allocation not approved by the Court will be reallocated to the Net Settlement Fund. *Id.*, ¶¶ 1.31, 3.2, 3.3.

B.    **CLASS AND PLAINTIFF RELEASES**

The Class Period is November 20, 2014 and February 28, 2022. Settlement, ¶ 1.5. The Settlement Class is "all persons residing in the United States who applied for a position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) between November 20, 2014 and February 28, 2022 and about whom Defendant procured a consumer report." *Id.*

The Settlement Class Members shall release:

[A]ll claims of any and every kind arising in whole or in part from or in any way related to Defendant's procurement of consumer reports or investigative consumer reports for employment purposes, regarding Plaintiff and such Class Members, up to and including the date of entry of the order for Preliminary Approval, including all claims brought or that could have been brought under the Fair Credit Reporting Act for statutory, actual and punitive damages, all state equivalent laws (including but not limited to the California Investigative

1   Consumer Reporting Agencies Act and California Credit Reporting Agencies Act
2   (California Civil Code § 1786 et seq. and 1785 et seq., respectively)), express or
    implied breach of contract, tort, equity, unfair competition, or any other type of
3   claim based on any federal, state or municipal statute, law, ordinance or
    regulation. The Class Members also shall waive any right to pursue in any forum
4   any such claims on a class or collective action basis of any kind, including any
    mass action. The Parties' settlement agreement shall expressly prohibit any
5   attempt to submit opt outs from the Settlement on behalf of any group of
    individuals (commonly known as "mass opt outs"). Opt outs shall be valid only if
6   submitted for or on behalf of a single individual. This release includes a waiver of
    California Civil Code § 1542 and like laws in other jurisdictions, and thus releases
7   all known and unknown claims arising from or related to the facts and claims
    alleged or that could have been alleged in the Complaint. Settlement, ¶ 4.1.

8       Each Class Member's Individual Settlement Share will be based on dividing the Net

9   Settlement Amount, the numerator, and the denominator of which is the total number of

10  Settlement Class Members whom have not opted out of the settlement. Settlement, ¶¶ 1.18, 1.21,

11  5.2.2.

12                  1.      **The Release is Reasonable and Should be Approved**

13      The Court additionally had concerns regarding the scope and ambiguity of the release. The

14  Settlement includes a release of all claims by Settlement Class Members arising out of the claims

15  alleged up through the date of entry of the order of Preliminary Approval. Settlement, ¶ 4.1. The

16  release is reasonably tailored to the claims presented in the case, as it is based on claims that arise

17  out of the identical factual predicate as the underlying claims settled, the procurement of consumer

18  reports or investigative consumer reports for employment purposes. *Hesse v. Sprint Corp.*, 598

19  F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a

20  related claim in the future 'even though the claim was not presented and might not have been

21  presentable in the class action,' but only where the released claim is 'based on the identical factual

22  predicate as that underlying the claims in the settled class action.' *Williams v. Boeing Co.*, 517

23  F.3d 1120, 1133 (9th Cir. 2008).) The release period is similarly narrow in scope, only covering

24  up through the date of the entry of the order for Preliminary Approval. Settlement, ¶ 4.1. Given

25  notice will be sent following the entry of the Preliminary Approval order, Class Members will be

26  given the opportunity to evaluate whether or not to exclude themselves from the Settlement should

27  they wish to pursue their claims instead of releasing them. As such, the release is reasonable, Class

28

Members will be provided adequate notice and have an opportunity to exclude themselves from the Settlement, and the release should be approved.

### C.     SETTLEMENT ADMINISTRATION AND NOTICE

No claim form will be required to receive a Settlement Payment. Settlement, ¶ 3.5. Each Settlement Class Member will be e-mailed the Settlement Notice, or for those without e-mail addresses or whom for which e-mail delivery fails, the Settlement Administrator will mail the Notice using U.S. First class Mail. *Id*. ¶ 5.2.3. Class Members will have 60 days from the date of mailing the Settlement Notice to submit a Request for Exclusion or to object to the Settlement. *Id.* ¶ 5.3.1. To be valid, a Request for Exclusion must include the Class Member's name and signature, current address, current telephone number, the last four digits of the Class Member's Social Security number and statement affirming the Class Members wishes to opt out of the Settlement. *Id.* The Settlement Administrator shall not review or consider any Opt-Out Request postmarked after the Objection/Opt-Out Deadline. *Id.*

The Settlement Administrator will also establish the Settlement Website, which will include the stipulation of Settlement and a summary of the key settlement terms. *Id.* ¶ 5.3.1.

### D.     DISPOSITION OF UNCASHED CHECKS AND RESERVE FUND

Settlement Class Members will have 180 calendar days after mailing to cash their checks. Settlement ¶ 7.2. There will be a second distribution of the residue from uncashed checks to Class Members who cashed their first check who will have 180 days to cash the second check. *Id.*, ¶ 7.4. Any uncashed funds remaining after the second distribution will be sent to the Electronic Privacy Information Center. *Id.*, ¶ 7.5. The Electronic Privacy Information Center is a non-profit consumer privacy organization focused on bringing public attention to emerging privacy and civil liberties issues across the United States. Id., ¶ 7.5; see https://epic.org/about/non-profit/ Class Counsel does not have a relationship with the proposed cy pres. (Setareh Decl. ¶ 45.)

## V.     LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    There is a "strong judicial policy that favors settlements, particularly where complex class

2  action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)

3  (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

4    Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining

5  whether a proposed class action settlement should be preliminarily approved by the Court. The

6  parties must first "provide the court with information sufficient to enable it to determine whether

7  to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must

8  direct notice in a reasonable manner to all class members who would be bound by the proposal if

9  giving notice is justified by the parties' showing that the court will likely be able to: (i) approve

10  the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

11  proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn,

12  provides:

> "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attor'ey's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other."

24    *Id.* (emphasis added).

25    The Ninth Circuit Court of Appeals has identified eight factors district courts may also

26  consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the

27  plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

28  risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("*Churchill Factors*"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004).  Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, and Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

As shown below, the settlement here meets the Rule 23(e) factors, as well as the Northern District's Procedural Guidance on Class Action Settlements

## VI.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e) (2) AND THE CHURCHILL FACTORS

### A.    Class Counsel and Plaintiff Adequately Represented the Class

Counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Setareh Law Group is a highly experienced and skilled Plaintiff's class action firm that worked efficiently and diligently to resolve the case.  Setareh Decl. ¶¶ 4-12, 35-38. Attorneys dedicated many hours to this case. Setareh Decl. ¶ 39. Setareh Law Group has also incurred over $24,000 in costs to prosecute the case. Setareh Decl. ¶ 41.

Class representatives are adequate where they have retained experienced counsel and have actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021).  Here, class representative Eric Wickham is dedicated to this case and spent substantial time and resources assisting Class Counsel throughout this litigation. Setareh Decl. ¶ 31.

### B.    THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH

The proposed Settlement arises after a non-collusive mediation facilitated by a renowned mediator. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

## C.    THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE

The relief provided for the class is adequate, taking into account:

        (i)      the costs, risks, and delay of trial and appeal;

        (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3)

*See* Fed. R. Civ. P. 23(e) (2)(C).

### 1.    <u>The Relief for the Claims Are Adequate, Given the Costs, Risks, and Delay of Trial and Appeal</u>

In addition to disputing the merits of Plaintiff's claims at trial, Defendant intended to aggressively challenge Plaintiff's case at the certification stage and onward.  Defendant believes that Plaintiff would not prevail on his certification motion, while Plaintiff believes the case was viable through to a trial. However, while Plaintiff asserts that this is a viable case for trial, he is fully aware of the risks and complexity of the case. The uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount. Further, given that there is potentially in excess of $2,962,800.00 at issue (29,628 class members multiplied by at least $100), although an award in that amount might not be likely, the Parties could be expected to expend considerable resources litigating the matter. Setareh Decl., ¶ 18.

There is the risk that this Court, a jury, or a reviewing court would find that Defendant's conduct was not willful. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.* (4th Cir. 2001) 257 F.3d 409, 417. A FCRA plaintiff can recover statutory damages only where the defendant has acted willfully. 15 U.S.C. § 1681n(a)(1).  Defendant contends that its conduct must have been objectively unreasonable based on clearly established law at the time of the alleged violation to be willful.  *Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47 ("a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a

reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). A finding of a mere negligent violation would not permit Plaintiff or the putative class to obtain statutory damages, and Plaintiff and class members who were hired likely could not seek actual damages – the only type of damages available for a mere negligent violation. Setareh Decl., ¶ 18.

In addition, Defendant contends that Plaintiff has risk that the claim would be deemed to be time-barred in whole or in part, a contention that creates risk on both class certification and the merits. Furthermore, Defendant contends that Plaintiff could not show Article III standing for himself and the putative class. Setareh Decl., ¶ 18.

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 489 (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. Setareh Decl., ¶ 18.

In light of these risks, as well as the hazards and expenses of carrying the case through trial, Plaintiff's counsel is of the opinion that the Settlement represents an excellent bargain for the Class. At this juncture, the Settlement would entitle each Settlement Class Member to a significant recovery. In contrast, if the case would continue in litigation, even if Plaintiff prevailed on a class certification motion, any appeal by Defendant would prolong already protracted litigation and delay remedies to the Class. Setareh Decl., ¶ 18.

To review, although Plaintiff feels confident in prevailing were litigation to continue through class certification and ultimately trial, considerable risks, delays and uncertainties nevertheless exist with continued litigation. The Parties have achieved a fair Settlement that reflects a meaningful recovery for Settlement Class Members and that merits the Court's preliminary approval. *Id.*

### 2. <u>The Proposed Method of Distributing Relief to the Class is Effective.</u>

The settlement provides that class members will be mailed checks directly and will not need to submit a claim form. And for class members who do not cash their checks, the money will

1   be sent via a second distribution to those class members who cashed the first round of checks,

2   ensuring a benefit to the class. Thereafter, any remaining residue will be sent to the *cy pres*, the

3   Electronic Privacy Information Center.

4           **3.      The Proposed Award of Attorney Fees is Fair.**

5           The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher

6   percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).

7   In appropriate cases, state and federal courts applying the percentage-of-recovery method

8   frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App.

9   4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average

10  around one-third of the recovery).

11          Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the

12  complexity of the litigation, the length of the case, and other relevant factors. *See Vizcaino*, 290

13  F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in

14  common fund cases").

15          In addition to the evaluation of "awards made in similar cases", the Court may consider (1)

16  the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4)

17  the contingent nature of the fee and the financial burden carried by the Plaintiff. See *Vizcaino*

18  *supra* at 1048-50.

19          The contemplated 33 1/3% fee award is extremely reasonable in light of the class

20  benefiting from the substantial risk of the claims litigated, years of hard work, exceptional results,

21  and over $24,000 in out-of-pocket fees and expenses borne by the Plaintiff's lawyers without any

22  guarantees of ever recovering these sums.

23          Plaintiff's Counsel have repeatedly shown their dedication to this case by tackling novel

24  issues of law, devoting a substantial percentage of their resources, and committing to the long-

25  term litigation of this action in the face of great opportunity costs.

26          The novelty and challenges presented by a class action, as well as the corresponding risk that

27  the class members and class counsel will be paid no recovery or fee, is properly evaluated in

28

connection with a fee motion. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

The second and third factors (i.e., "the risk of litigation"; and, the "skill required and the quality of the work", respectively) are largely intertwined. *In re Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d at 1301 n.10.

Here, Class Counsel faced significant risk in pursuing this litigation that was only overcome by their skill and experience in the field of wage & hour and consumer class actions. *See* Setareh Decl., at ¶¶ 36-38; 41-43.

Plaintiff's Counsel also clearly faced substantial risks associated with certifying this class action and prevailing at trial. These numerous risks faced by Counsel, coupled with their deft skill in keeping this litigation on course towards trial until a settlement was reached, justify the 33.3% award contemplated by the settlement agreement. *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *15 (C.D. Cal. July 21, 2008) ("Given the novel legal issues raised, the court concludes that the circumstances warrant an award" of 34%).

The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee 33.3% award. *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Class Counsel undertook all of the risks of this litigation on a contingent fee basis. Setareh Decl. ¶ 41. They also faced the risks involved in litigating this case for years and spending thousands of dollars in costs, without any guarantee of future pay or reimbursement.

In addition to these hard costs, Plaintiff's Counsel committed many attorney hours to the action. This includes but is not limited to propounding and responding to written discovery, interviewing percipient witnesses, obtaining declarations from percipient witnesses, reviewing documents produced by Defendant, working with Plaintiff's expert, beginning to draft the motion for class certification, drafting mediation briefs and preparing extensively for two mediations, and monitoring other litigation involving Defendant with potentially overlapping claims.

Additionally, the number of attorneys and staff necessary to litigate this action constituted a significant percentage of Plaintiff's Counsel's total workforce. *See* Setareh Decl. at ¶ 40. Again,

all of these important resources were willingly committed by Plaintiff's Counsel knowing that they risked recovering nothing.

### D.   Class Members Will Be Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

Here, each Class Member receives an equal, *pro rata* amount based on each of them having a consumer report procured by Defendant during the class period. Settlement, ¶ 3.5 Such a distribution is inherently just, fair and reasonable.

## VII.   THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE

### A.   INFORMATION ABOUT THE SETTLEMENT.

#### 1.   Differences Between the Settlement Class and the Class Proposed in the Complaint.

The Settlement Class is narrower in that the complaint class ends when judgment is entered while the settlement class period ends on February 28, 2022. In reality, if a class was certified, the class definition would only include applicants through the date of certification, and may even be limited to certain disclosure forms in use throughout the Class Period. Additionally, during the mediation, class counsel reviewed Defendant's current Consumer Report Disclosure Document, which was included at the top of Page 61 of 95 in Doc. 62-1 filed in the Action, and Class Counsel believes it complies with the FCRA, based on Defendant's representation that the Disclosure is presented to applicants on its own page online. Setareh Decl. ¶ 42. Based on this, the Parties limited the scope of the release to be the day before this form was used. *Id*.

#### 2.   Differences in the Claims to be Released and the Claims Pled.

The Settlement Agreement expressly releases claims under the California Investigative Consumer Reporting Agencies Act and California Credit Reporting Agencies Act. Potential claims under the ICRAA, covered by the Released Claims for the Settlement Class, are closely

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

related to, and cover the same subject matter as, Plaintiff's claim under the FCRA relating to Defendant's background check forms. Setareh Decl., ¶ 43. As a result, they would not contribute much in aggregate value on a class-wide basis and are difficult to prove.  Furthermore, the plain language of the ICRAA makes clear that statutory damages are not available in a class action. Civ. Code § 1786.50(a). Finally, based on the text of the ICRAA statute, Defendant contends that class members can elect to recover under the FCRA or ICRAA, but not under both.  Civ. Code §1786.52(b).   For these reasons, Plaintiff has not ascribed any value to the ICRAA claim. Additionally, courts have supported Plaintiff's theory of limited value for the ICRAA claims, as noted in the context of reviewing proposed class action settlements in similar cases and concluding that potential recovery on state law background check claims is "quite limited". *See, e.g., In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *5 (N.D. Cal. June 29, 2017) (granting preliminary approval).

### 3.    Other Cases Affected by the Settlement.

Defendant represents there are no currently pending class actions which allege the same causes of actions as the current action.

### B.    SETTLEMENT ADMINISTRATION

The Parties have selected Simpluris, Inc., as the Settlement Administrator in this case. Plaintiff obtained four bids from administrators Phoenix Class Action Administrators, ILYM Group, Apex Class Action Administrators, and Simpluris, Inc. Simpluris' bid was the most comprehensive and very competitive. In Class counsel, experience, Simpluris is a competent administrator who is responsive and diligent. Setareh Decl. ¶  30-31. Simpluris is experienced and has security procedures in place. Declaration of Denise Islas ¶¶ 4-7, Ex. B. Simpluris has administered 30 cases with Setareh Law Group in the last 2 years. *Id.* ¶ 4. In Class Counsel's experience, Simpluris' bid of $73,000 is reasonable given the size of the class. Setareh Decl., ¶ 31.

### C.    NOTICE.

The Notice of Settlement is Exhibit 1 to the settlement agreement. Consistent with section 3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (p. 2); a website address for settlement class members to obtain further information and see key documents

(*Id.* at p. 7); the date and time of the final approval hearing with a statement that the date may change without further notice to the class (*Id.* at p. 1); and instructs class members to check the website to ensure the date and time of the final approval hearing have not changed. *Id.* at pp. 1, 7.

The Notice also uses the proposed language suggested in the Procedural Guidance. *Id.* at 7.

**D.    OPT OUTS.**

The Notice advises class members that they can opt out by sending a written request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name and the last four digits of the social security number. *Id.* at p. 5.

**E.    OBJECTIONS.**

The Notice advises class members of the deadline to submit objections and provides that objections are to be sent to the Court. *Id.* at p. 6.

**F.    SERVICE AWARD.**

Plaintiff Eric Wickham seeks a service award of $7,500 for the extensive time and effort he contributed to this case, without which the $1,275,000.00 Settlement would not exist. Setareh Decl. ¶ 27. Mr. Wickham responded to multiple sets of discovery requests throughout the case. *Id.* Mr. Wickham additionally provided substantial assistance to Class Counsel in developing the claims in this case, provided relevant documents and discussed the pending settlement with Plaintiff's counsel along with being available by phone the date of mediation. *Id.*

**G.    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS.**

Defendant's counsel represents that Defendant will comply with CAFA and handle providing CAFA notices.

**H.    COMPARABLE OUTCOME.**

A comparable settlement to the instant one is *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288 (N.D. Cal. 2019), which involved similar FCRA claims. However, that settlement occurred before the United States Supreme Court held that under the FCRA, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion v.*

*Ramirez*, 141 S.Ct. 2190, 2208 (2021) (emphasis added). The Court also reaffirmed its holding in a prior FCRA case, *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), that a plaintiff can only rely on a statutory violation to satisfy Article III by demonstrating the violation caused a "concrete" "injury-in-fact." *TransUnion*, 141 S.Ct. at 2205; *see also Spokeo, Inc*., 578 U.S. at 340-41 (a "concrete" injury is "real, and not abstract"). Thus, *Delta* involved much less risk at the time of settlement. The *Delta* settlement involved a total settlement fund of $2.3 million for approximately 44,100 class members. *Delta*, 2019 WL 955288, at *1. In *Delta*, the gross settlement amount per class member was $52.15 ($2.3 million / 44,100.) The gross settlement amount per class member in this settlement is $43.03 ($1.275 million / 29,628), which is slightly lower than the gross settlement amount per class member in *Delta*. However, given unfavorable developments in case law on this issue which increased the risk of the Court denying certification, this is an excellent result for the class.

## I.    ELECTRONIC VERSIONS.

Upon filing of this motion, Class Counsel will submit Word versions of the Proposed Order and Settlement Notice.

## J.    OVERLAPPING CASES.

Schenker's counsel represents that they will comply with this requirement.

## VIII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM

### A.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT

#### 1.    <u>Standard for Conditional Class Certification Upon Settlement</u>

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1) numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or

defenses of the class, and (4) commonality: there are questions of law or fact common to the class. In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." However, in the context of settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem supra* at 620.

## 2.    Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). No specified number of members of class is needed to maintain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967). Numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the estimated count of approximately 29,628 Settlement Class Members satisfies the numerosity requirement. Settlement, ¶ 1.5.

## 3.    Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff has the same interests as the Settlement Class, there is no conflict between Plaintiff's claims and those of the other Class Members, and Plaintiff is represented by experienced and competent counsel who have substantial experience in litigating wage-and-hour and FCRA class actions and who have no known conflict of interest with absent Settlement Class Members. Setareh Decl., ¶¶ 35-38.

## 4.    Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's claims are essentially identical to all other applicants for employment in the United States as described in the class provided in the Settlement, as each received a substantively similar disclosure and authorization form. Setareh Decl., ¶ 22.

### 5.   Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, Plaintiff's claims involve common questions of both fact and law regarding Defendant's alleged failure to abide by the Fair Credit Reporting Act, including whether or not the disclosure and authorizations in use during the Class Period were clear and conspicuous. Setareh Decl., ¶¶ 23-24.

### 6.   Predominance and Superiority

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification for settlement purposes is proper under one of the three requirements of Rule 23(b). Here, "questions of law or fact common to class members predominate over any questions affecting only individual members, and…a class action is superior to other available methods for fairly and efficiently adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Setareh Decl., ¶¶ 24-26. For settlement purposes common issues regarding the legality of Schenker's background check practices predominate over any individualized issues. And, given the small amount of recovery expected in any individual claims (with only a maximum of $1,000 in statutory damages being available pursuant to 15 U.S.C. § 1681 *et seq.*) class treatment is plainly superior to individual adjudication.

### 7.   Plaintiff has Article III Standing and the Court Can Grant Class Certification

The Court expressed concerns at the hearing about granting conditional class certification based on the issue of whether class members are required to establish Article III standing. The

1  Court specifically referenced the then-pending Supreme Court case *Laboratory Corporation of*

2  *America Holdings, DBA LabCorp, v. Davis, et al.*, 605 U. S. ____ (2025). Since the Court's Order,

3  the Supreme Court dismissed the writ of certiorari as improvidently granted in *LabCorp*.

4       Plaintiff has Article III standing here. During the hearing on March 6, 2025, the Court

5  suggested as much. The Ninth Circuit has found that there is "a concrete injury when applicants

6  are deprived of their ability to meaningfully authorize the credit check." *Syed v. M-I LLC*, 853

7  F.3d 492, 499 (9th Cir. 2017) (citations omitted). In *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016),

8  the Supreme Court additionally held that a plaintiff can only rely on a statutory violation to satisfy

9  Article III by demonstrating the violation caused a "concrete" "injury-in-fact." Here, Plaintiff's

10 amended complaint does just this, alleging that Plaintiff was confused and would not have

11 otherwise authorized Defendants to obtain a background check had he understood it. See Second

12 Amended Complaint ("SAC") at ¶ 25.

13      The U.S. Supreme Court has held an Article III "case or controversy" exists when one

14 plaintiff has standing. *See, e.g., Horne v. Flores*, 557 U.S. 433 at 446–47 (2009)("[W]e have at

15 least one individual plaintiff who has demonstrated standing .... Because of the presence of this

16 plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing

17 to maintain the suit." (quoting *Vill. of Arlington Heights v. Metropolitan Housing Development*

18 *Corp.*, 429 U.S. 252, at 264 & n.9 (1977))). The same principles that apply to individual claims

19 apply to class claims, which, "like traditional joinder, ... leaves the parties' legal rights and duties

20 intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

21 *Co.*, 559 U.S. 393, 408 (2010) (plurality opinion).

22      Whether a class contains uninjured class members does not defeat conditional class

23 certification. *See Bouaphakeo v. Tyson Foods, Inc.*, 593 F. App'x 578, 585 (8th Cir. 2014)

24 (opinion of Benton, J., respecting the denial of rehearing en banc) ("The failure of some

25 employees to demonstrate damages goes to the merits, not jurisdiction."), *aff'd*, 577 U.S. 442

26 (2016). Jurisdiction "is not defeated" by a plaintiff's inability to demonstrate that he can "actually

27 recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *see Warth v. Seldin*, 422 U.S. 490, 498 (1975).

28 Here, as noted above, Plaintiff has Article III standing. As a result, the Court can conditionally

certify a Settlement Class without determining whether Article III standing exists as to each member of the Settlement Class.

Furthermore, the predominance analysis is relaxed for conditional certification of a class following a settlement. In *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) the Ninth Circuit held that settlement is relevant to whether the predominance inquiry is met:

> The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.

*Id.*, at 556-557. This was echoed in other cases in this district following *Hyundai. See Suarez v. Bank of America, N.A.*, 2023 WL 5837495 (N.D. Cal. 2023) ("The court's previous denial of class certification does not change this analysis. *Harrison*, 2021 WL 5507175, at *5. Certifying a Rule 23(b)(3) class for settlement purposes does not raise the same manageability issues that certifying a litigation class does.") Here, similarly, the parties have come to a resolution, and there will be no trial. Therefore, any manageability concerns previously raised by Defendants in opposition to class certification are moot, considering there will be no trial. As such, because Plaintiff has Article III standing, the Court should grant conditional certification of the Settlement Class.

### 8.    Alternatively, if the Court Finds Plaintiff Lacks Article III Standing, It Must Remand this Action to State Court

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Polo v. Innoventions International, LLC*, 833 F.3d 1193 (9th Cir. 2016). Lack of subject matter jurisdiction is never waived and may be raised by either party or the court at any time – even for the first time on appeal. *Henderson ex rel. Henderson v. Shinseki* 562 U.S. 428, at 434 (2011).

The California Supreme Court has made clear that standing is not a jurisdictional prerequisite: "Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine." *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247-48. Moreover, the California Supreme Court has held that there is no "case or controversy" requirement in the California

Constitution, unlike Article III of the United States Constitution. *Grosset v. Wenaas*, 42 Cal.4th 1100, n.13 (2008) (*citing Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991)); *see also Jasmine Networks, Inc. v. Superior Court*, 180 Cal.App.4th 980 (2009). Not only that, the United States Supreme Court has held that state courts are not bound by Article III, even when they decide questions of federal law. *Asarco Inc. v. Kadish*, 490 U.S. 605 (1989).

For these reasons, if this Court is not convinced that Plaintiff has established Article III standing to maintain this action in federal court, then it must remand this action back to state court where the justiciability requirements are more lenient. 28 U.S.C. § 1447(c).

## IX.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the motion for preliminary approval in its entirety.


DATED:  August 6, 2025                    **SETAREH LAW GROUP**

                                          */s/ Shaun Setareh*
                                          SHAUN SETAREH
                                          BRIAN LOUIS
                                          Attorneys for Plaintiff
                                          ERIC WICKHAM